The next case called for oral argument is in the Matter of Z.J.F. Good morning, Your Honors. Good day. My name is Howard Oestreich, and I represent the appellate in this matter. Your Honors, this case concerns the fundamental right of a parent to raise his child, and the high burden placed on the state to find a parent unfit to terminate his parental rights. Because parental rights are recognized by law as fundamental, the goal and purpose of Illinois Abuse and Neglect Law is to reunite families. In most cases, not this case, but in most cases, the Department of Children and Family Services offers assistance and services to parents whose children have been removed. And they seek to terminate parental rights only after a parent has demonstrated that they cannot or will not complete the tasks provided in a DCFS service plan. And those measures simply were not taken by the DCFS provider in this case. And to further protect the parents' fundamental liberty rights to raise their children, the state's burden to prove a parent unfit requires the highest civil standard, clear and convincing evidence. The record supports the conclusion that if the words clear and convincing are to have any meaning whatsoever, the state did not meet that burden. With all due respect and deference to the trial court, it erred when it found the respondent father unfit based on the evidence presented by the state. The record clearly shows that this decision was against the manifest weight of the evidence. And for these reasons, Your Honors, we respectfully ask this court to reverse the trial court's ruling and remand the case for further proceedings in the interest of justice. Your Honors, in this case, the minor child in the matter, the first and only biological child of the respondent father, was born while the respondent father was in custody, awaiting trial for burglary-related charges in Williamson County. In approximately six weeks after the child's birth, the respondent father pleaded guilty to three burglary charges and received a five-year prison sentence. Now, this was his first and only incarceration as an adult. And, Your Honors, no one is claiming that the appellant... Now, you say incarceration. Had he been convicted? And was he on probation, parole, or anything else? Yes, Your Honor. What was that? He was on probation, I believe, in the early 2004 possession of meth precursor. How old was he? How old? He is, I believe, 26 at the date. Today. Okay. Your Honors, the caseworker assigned testified that the respondent father did not return releases so that she could communicate with him while he was in custody. But the respondent father denied under oath that he had been given these releases. Nevertheless, the undisputed testimony indicates that the next correspondence taken by the DCFS caseworker with my client took place in April of 2012. That was nearly nine months after he entered the Illinois Department of Corrections and only after the case had been submitted to legal screening and the state had filed its own petition to terminate his parental rights. And furthermore, Your Honor, the fact that she was able to send this correspondence in April belies the fact that she could not communicate with my client. The fact is that she chose not to. The record shows that the Lutheran social service worker took the case to legal screening on September 17th of 2011. Your Honors, that is less than two months after the adjudicatory hearing and less than four months after the opening of this case. As a result of the legal screening, the state filed its petition to terminate his parental rights in March of 2012 based on two grounds. Failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare and that the parent was incarcerated, had little or no contact with the child prior to the incarceration, which, Your Honors, he could not because the child had not been born. And he would be incarcerated for a period in excess of two years after the filing of the petition. Now, Your Honors, it is highly significant that after a legal screening by a trained DCFS attorney and a trained DCFS caseworker, the resulting motion to terminate parental rights did not include the ground of depravity. I want to interrupt you and go back a bit. The state argues that essentially they were precluded from having contact with your client until he had executed these release documents. And you say he has testified he never received them, and, of course, the state, obviously, their position is they sent them. Isn't that a credibility issue? Your Honor, the fact that she was able to send a letter later on asking about the services that he had received while he was in prison indicates that there was no prohibition from the DCFS worker contacting her client. And the state never came forward with any evidence that suggested that a DCFS caseworker could not contact the client even if that client was incarcerated. Okay. Thank you. Don't releases have to be executed in order to specify the persons or entities that have contact with a prisoner? Your Honor, some releases do have to be executed in terms of information released from mental health facilities, some of the tasks which would have to be completed by the client. However, we never got to that. And the fact that she could simply contact him and get the ball rolling, Your Honor, I don't believe that's a dispute that she was able to do that. And, again, the fact is that nearly weeks later, after she claimed that she provided his release, she was already taking the case before the Supreme Court. And, in fact, so, again, the initial petition to terminate his parental rights did not include depravity. In fact, an amended motion for terminating... Does it have to? No, Your Honor, it does not. Okay. And are you contesting the fact that he was not depraved? Yes, Your Honor. Okay. Did he not... We are contesting the fact that he is depraved. Is depraved. Yes. And it's your burden, however, isn't it, to show that he was not depraved? Well, Your Honor, the fact... Once they show that there were, I guess, the three felonies. Three convictions. We then were required to show, to provide some evidence that he was not depraved. At that point, Your Honor... What do you mean by some evidence? You don't have to rebut that presumption? Yes, Your Honor. We rebutted that presumption with some evidence of the fact that he was not depraved. And the law states that at that time, rebuttal no longer operates, and the case goes forward on the evidence presented at the trial by the state. Well, what is the standard of the rebuttal? Your Honor, there is case law that states that that standard is not exactly clear. Your Honor, at this time, I do not have that case number on me. However, in my research, I do see that. That case, and I can get that for you, Your Honor, stated that although it is not actually mentioned or actually highlighted, if the burden is high, which obviously the burden on the state is very high, then the burden on my client would be very high as well to show that he is not depraved. But you believe that that was sufficiently overcome? We contend that it was not. Okay. So, in fact, an amended motion for termination, which included the grounds for depravity, was not filed until September 20, 2012, and only after the respondent's father motioned to strike the second ground. That was the ground of being incarcerated for more than two years and not having contact with the child. It is important to note that there are no grounds under the statute that would support the termination of the respondent father's parental rights based solely on his incarceration. At the termination hearing, the state withdrew the second ground without argument and presented absolutely zero evidence with regards to the respondent father's lack of interest, concern, or responsibility. As a consequence, the only ground on which the trial court could rule was a depravity count. So this last fact undercuts the state's assertion that the actions of the caseworker are irrelevant because the ultimate findings were based on depravity. In fact, what is relevant is the caseworker's duty to reunite families because if she had performed her duty, if she had assisted my client, there is a very good chance that this case would never have gotten to a point where the state felt they needed to file depravity charges. The caseworker admitted in testimony that her duty to reunite the family exists until the permanency goal is shifted to substitute care pending the court determination on the termination of parental rights. The record is clear that the caseworker made no effort to contact or confer with the respondent father in any meaningful way prior to taking the case to legal screening. The record is further clear that a service plan specific to the minor child in question was not filed with the court until June 12, 2012. Your Honor, that is nearly nine months after the case was sent to legal screening and nearly three months after the state filed its motion to terminate parental rights. Now the DCFS service plan is the primary vehicle for reunification, listing tasks that must be completed by the parent and providing the basis for communication between the parties as to the progress being made  This is where his attorney would get involved. This is where the caseworker and the client discuss progress. This is what would have precluded this case from ever going to a legal screening in the first place. And Your Honor, the flippant and blatantly shoddy nature of LSSI's handling of this case is obvious not only in its failure to file or confer with my client a DCFS case plan, but by that caseworker's giving herself a rating of satisfactory for referring an incarcerated parent to a substance abuse assessment at the H Group in Marion, Illinois. It shows that her efforts were hollow and meaningless. Her breach of duty to reunite families in this case was an abuse of the respondent father's constitutionally protected liberty interest in raising his child. The caseworker made up her mind at the earliest stages that this child would be better off with the foster parents and immediately pursued termination of parental rights while failing to take even rudimentary steps at reuniting the family. And again, as it turned out, neither of the two grounds on which the caseworker relied on to ignore her duties turned out to be legally sufficient to support termination. Your Honors, the State of Illinois owes all of its citizens, even its incarcerated citizens, far more than what was provided to the respondent father in this case. Again, this matter concerns a fundamental liberty interest, which is protected only when DCFS does its job. Those duties were breached in this matter, and as a consequence, the trial court's decision should be reversed and the case remanded for proceedings consistent with Illinois law and the administration of justice. And Your Honors, we also respectfully submit that the trial court's finding that the respondent father is depraved was against the manifest weight of the evidence. Under the relevant statute, the fact that a parent was criminally convicted of three felonies, with at least one taking place within five years of filing the petition, creates a rebuttable presumption that the parent is depraved. The Illinois Supreme Court has defined depravity as an inherent deficiency of moral sense and rectitude. So, in other words, inherent. A court's finding of depravity will create an indelible label on a parent for the rest of his or her life. And to find a parent unfit based on depravity, the state must establish that the parent is depraved not in the past, but Your Honor, they must establish that he is depraved at the time of the petition to terminate parental rights. And Your Honor, that petition, which included a depravity ground, was filed on September 20th of 2012. Your Honors, we contend that the correct line of cases for considering depravity are found in NRAI JA 316 Bill F-353, which states that once evidence opposing the presumption comes into the case, the presumption ceases to operate, and the issue is determined on the basis of evidence adduced at trial as if no presumption had ever existed. Your Honors, in NRAI SHDH and JH 284 Bill F-3392, states that the narrow definition of depravity means that the commission of most felonies, even very serious ones, will not, without more, support a finding of unfitness based on depravity. And Your Honors, in Ray Sanders 77 Bill F-3rd, which is a 4th District case, states that in addition to reviewing the parent's past action, the court must also measure the parent's present and future value system with some allowance for rehabilitation, without which the termination of parental rights would merely count as punishment for the crime. Your Honors, it is apparent from the record of the trial judge's ruling that the criminal convictions used by the state to create the rebuttable presumption of depravity were erroneously construed as a pattern of criminal activity. The evidence showed that three of the felonies took place over the period of approximately 24 hours, suggesting essentially a single course of action, and a course of action which would not support the conclusion of the pattern by any group, let alone parent-convincing evidence. It is also important to note that all felonies considered were property or possession charges, and none related to acts of violence or anything that may indicate that the respondent father could be a danger to his child. And Your Honors, this is not to minimize his crimes. Not what we are trying to do. But Your Honor, this does speak directly to the language of N-Ray, S-H, D-H, and J-H, which was previously referenced. While the honest and forthcoming testimony, and granted at times maybe a little too forthcoming from my client, he did reveal a past which included alcohol and substance abuse, and this testimony should not be reasonably construed as meeting the state's burden of proof. The crimes for which the convictions were based, as well as the respondent father's substance abuse issues, all took place before the birth of the minor child. And remember, Your Honor, the state has to prove, by parent-convincing evidence, that he was depraved at the time of the state filing the petition. While it is certainly appropriate for the court to consider past behavior, and while it is also true that the respondent father's incarceration was instrumental in his becoming sober, the record is full of evidence that he is not a depraved individual. Are we going to find in the record any evidence of completions of programs while in prison? Yes. That he was offered? Yes, Your Honor. Because it seems that the state said that he really didn't avail himself of anger management or parenting or drug abuse programs. To the contrary, Your Honor. There will be certificates or whatever in there to prove that he has completed those programs. We have his testimony. We have his testimony, that's it? Yes. And that's what you're saying proves that he's completed programs? Your Honor, I believe in the appellee's brief that states that he did not, but I don't believe in the record that there is any indication at the trial level that it was refuted. That it was what? Refuted. Well, maybe it wasn't proven rather than refuted. I mean, the court has certainly the discretion not to find his testimony credible with respect to those. Your Honor, but in the court's finding, it did not mention my client's credibility whatsoever. In fact, it did not mention anything that happened other than the crimes he was convicted of in his prior drug and substance abuse. Okay. So, again, Your Honor, given the required time at which the state needed to prove depravity, they failed to meet their burden. But the record does show, through testimony, that the respondent father took responsibility and cared for his elderly and blind father when he was a young man, not an act of inherited deficiency of moral sense or rectitude. The record showed that he was a better parent to his stepdaughter than her own mother, and that he assumed the burden for much of her care. That he achieved his GED as soon as was possible after having left school. And, Your Honors, he has been a model prisoner who has clearly demonstrated that he takes his incarceration and rehabilitation seriously. He successfully completed technical and academic college courses while incarcerated. He signed up for anger management counseling on his own volition and saw a mental health professional for one-on-one counseling. He demonstrated his love for his son and his desire to establish a bond with him by writing letters and participating in a storybook reading program. And, Your Honors, the CD of that reading is part of the record, and I would encourage you to listen to it. Your Honors, if you do, you will hear a man that is not depraved. And he has demonstrated he was serious about his rehabilitation by successfully receiving a transfer to a minimal security facility, a move which required the approval of multiple levels within the Illinois Department of Corrections. Your Honors, he is a model example of why, hopefully, we send individuals to prison to become rehabilitated. Now, Your Honors, profoundly, Your Honors, it is important to mention the nature of the relief that Respondent Fowler seeks. A reversal of the trial court's decision would not mean that he would get his child back. It means he would get the opportunity to demonstrate that he is a capable and loving parent. Anyone who has ever experienced the birth of a child knows that it can be a life-changing experience. For those who take their incarceration seriously and rehabilitation seriously, as is undisputed in this case, Respondent Fowler and his penal experience has been a life-changing experience. And, Your Honor, these stand in between the reasons listed by the judge that he was depraved and September 20, 2012, the date at which the state had to prove his case by clear and convincing evidence. Thank you. Thank you, Counsel. Counsel? Good morning, Your Honors. May I please have the floor? I do want to initially quickly address a question that Justice Chapman raised about the Respondent's burden after the state meets his crime of facial showing and depravity. There really is not a specific definition of what that burden is. I would submit to the court, though, when I do this because I think it's in view of the fact that it's a substantial constitutional right that's being sought to deny and deprive the Respondent. Because there's an inclination, as we've seen in the case law at any time, that there are presumptions that are involved in the case against those presumptions being enforced in an overly burdensome manner against the party against whom the presumption is made. I would agree with the Respondent that the burden is probably a light one. The case law that I've reviewed in this regard has typically only found an absence of rebuttal where there was simply no rebuttal. And so under those circumstances, I'm willing to say here that I think under that liberal standard, the Respondent has probably met that. That being the case, I also would submit that the state had presented evidence that would rebut the crime of facial case as well. And so just to get that clear, I would agree with the Respondent in that regard. It's a light burden, and I think that that really would conform to the constitutional rights that are involved in this case. Due process is a rather nebulous concept. And I would agree with the Respondent to this particular step, that the involvement or the lack of involvement or the lack of cooperation or acts undertaken by the Department of Children and Family Services does have due process implications, but those implications are not freestanding in the sense that if they do and don't do something, then it is a matter of an automatic conclusion that the Respondent's due process rights are violated. One definition of due process has typically been that it provides protection against governmental interference with the fundamental right to liberty of interest. And so, in other words, a Respondent has a right to due process to have protections against something which can or would result in the deprivation of the liberty of interest, which in this case would be the right to parent a child. Working backwards from that, then, a deprivation of the due process right would necessitate a finding that there was a fact of governmental interference, which, as a result of that, resulted in the Respondent losing a constitutional right. So it seems probably fairly self-evident, but it is an interesting question, and I think the resolution is simply this, that if DCFS does or doesn't do something and there's not a connection between that and the ultimate process by which there's a deprivation of the constitutional right, then there's no denial of due process. I don't agree with the Respondent when the Respondent argues that, well, if DCFS had simply met their burdens in this case, and I'm not conceding that they did or did not, I'm simply arguing this from the perspective of an assumption that they did not, and that's probably the easiest way to approach this. It does not mean that there were precluded a finding of the Respondent's depravity. The standard of depravity is contingent wholly upon the character of the Respondent and the Respondent's ability to comport with the moral standards of society, and nothing that DCFS does or doesn't do is going to change that. When you look at cases, and you look at particularly, say, the in-rate TV case at the Respondent's site, there's a good example of what I'm saying. A court should not allow a factor that DCFS does a sloppy job to contribute to an ultimate finding of unfitness. You'll see that most often in cases involving reasonable progress and reasonable efforts, which are often assessed against the standard of progress reports and the tasks that DCFS assigns. If there's no chance for a Respondent to complete those, then obviously an ultimate finding later on, if you fail to make reasonable progress or efforts, there's going to be a violation of the process, because how could they complete it if DCFS hasn't given them the tools and the means by which to do so? But that's not what we have here. And I don't think it's really relevant what other allegations the State made or withdrew or didn't prove or whatever the case may be. The only question before this Court is the fact that the Respondent's parental rights were found unfit on the basis of depravity, and that's a determination that is necessarily made singularly upon the consideration of the Respondent's own conduct as it relates to a finding of depravity. So that would be basically all I would say on the due process aspect of it. There is due process implications, but they're implicated only to the extent that an action by the Department of Children and Family Services has actively caused the deprivation of that record, i.e., not cooperating in regards to something where the Respondent is ultimately found to be unfit on the basis of reasonable progress or efforts. And I'm not limiting you to that, but I think that you have to make a connection between what DCFS does and doesn't do and how is it that the Respondent got to the point that his parental rights had been determined that he had been found unfit. Mr. Daley, the Defendant wants to focus on his current future prospects and conduct. Could you kind of lay out for me what you believe the State... Well, here's the thing. Depravity cases always sort of make me a little uncomfortable because the word depravity sort of connotes that you're just some sort of awful person. I don't think it necessarily means that, but what it does mean is that you have, for one reason or another, demonstrated inability to comport with the standards of law by these citizens. The State, as a matter of law, cannot win on the basis of depravity simply on the basis of the convictions if there's been a Republican Respondent. They can't. They don't. That's not really what we have going on here. Because I think that what you have and what the Circuit Court focused upon was that there is a conglomeration of facts in these cases which all relate to only one specific thing, and that's the Respondent. It's a serious, serious drug problem. And it's a drug problem that predates even his adult foray into criminality. There was evidence that was presented that even when he was on probation as a juvenile, that he was given the opportunity to get drug counseling, and he failed to do so. He attended one meeting, and that was the end of it. If you look at the facts as they bleed through the events that occurred in this case, there's a mountain of evidence about the uses of methamphetamine, Xanax, prescription medications. It was an impetus that fueled the drug, fueled the crimes that resulted in the convictions. There's evidence that he had just been gotten out of jail on a driving while license suspended charge before he then engaged in these burglars. There's evidence that he had received a DUI, although he made much about it in the hearing, that he was suffering because he had been involved in a DUI accident as a passenger, which resulted in the fatality of someone else in the car. Well, then you get a DUI after that. I think that that certainly demonstrates a problem. It certainly demonstrates the substance of his problem, but it also demonstrates the problem to conform your actions to societal standards. Now, let's look at what the respondent has presented as far as proof of non-depravity. Certainly, he's provided some things, and we can sit here and perhaps quarrel about what it really means. For instance, well, he's been a model prisoner and, therefore, has had time reduced from his sentence, and he's arranged and facilitated a transfer to the Vianna Correctional Center. I'm not going to sit here and say, well, gee, that's sort of wild. I mean, I like to see model prisoners, but you also have to sort of pull asterisks by that by saying a model prisoner gets out of prison early, and that's where I'm sort of leading to here. I think the respondent's counsel and I probably disagree to some extent about what the record shows as far as doing things in prison. He had done a few things. He had gotten a certificate, I think, for some sort of custodial something or another, and it appears he may have taken some anger management classes, and he claimed that he saw some woman. I don't know who it was. He was never identified for some one-on-one counseling. I don't know what that counseling was for. We don't know what any of it was for. But what he did say is, as I read the record, and I have here in my notes, that he expressed an intent to enroll in all sorts of programs. Well, intentions in the $5 will get you a cup of coffee to start with. It doesn't really establish anything other than a future goal, but we don't know. That doesn't mean that he's actually achieved anything. Well, the defendant says that was unrebutted. What is your position with respect to the weight that should be given? Weight is the exact terminology that I would attribute to that. It can't be ignored. But on the other hand, as Your Honor points out, a lot of what he says was simply very conclusory and sort of unspecific claims which are not supported by any sort of evidentiary basis. And remember, I think what I want to lead to here is the most important thing. What I never heard from the respondent through this case was, Your Honor, I have a drug problem. I need help. I need counseling. I need to do something. Yeah, he's going to clean up in prison. But, you know, a drug problem just doesn't go away. And certainly it's a legitimate concern given the rapidity, almost explosive rapidity, of criminality fueled by drug addiction, which is apparently having nothing done for it while he's in prison. It's a legitimate concern that if we're to attribute to the respondent at least an intention of fixing things, it would be the first thing out of his mouth. But we didn't hear that. So while the respondent has done some good things, these things also have to be weighed against all the other considerations that the court has to take in mind about whether it can be legitimately believed, whether the manifest way the evidence demonstrates that he really has and will have the ability, has had and will have the ability to conform to societal standards. And given the fact that this court defers to the circuit court's judgment in that regard, I don't believe that that finding is against the manifest way of the evidence. One thing that the respondent mentions as well, and I think it's also important to note, is that this is not a crime, even not human crimes, of violence, sexual assaults, things of that nature. While it's true, I think it's also important to note that these are also by the same notion not victimless crimes. I would imagine anyone who's been the victim of a burglary, a residential burglary, would be the first to say that they felt violated as a result of that criminal action. Again, when I say to Crowley, don't say that he's bad. He's only bad because he can't get off the drugs. And he's only bad because there's no assurance whatsoever that he ever will get off the drugs, because nothing has been done about it. And the one time that he had a chance to do something about it, he blew it off. He was a minor. I grant you that. But it just got worse from there. His criminality stretches from the time he was 18 years old and hit that big boy court and got that methamphetamine conviction all the way up to the time that he was incarcerated and his burglary charges. So, Your Honors, I would believe that if you look at the record and give, again, consideration to the deference paid to the circuit court in its factual findings, that there is ample evidence for the court to find that the state approved by an amnesty of the evidence responds to the crime. Court, do you have any questions? I don't believe so. Thank you, Counsel. Counsel? I believe I may be able to clear up the confusion about his intention to re-enroll in classes, although I don't have the record in front of me. I believe that testimony came when asked about his intention after his transfer to the ByAnna Correctional Facility, which had taken place in between September 20th of 2012 and the fitness hearing on November 29th. So he had just arrived at the ByAnna facility, and I believe that question was not about the services that he had completed when he was at Lawrence, but rather what he intended to do and what he had yet to have the opportunity to do after his arrival at ByAnna. Your Honor, we do not deny, and again, my client certainly did not deny that he had a serious drug problem. But again, his failure to complete the substance abuse as a juvenile should not have very much weight when it comes to clear and convincing evidence when the date the state had approved that he was depraved was, again, September 20th of 2012. But the question in my mind is, what has he done since that time? Because drug addiction, especially methamphetamine, doesn't go away. He may be without the drug when he's in prison, but it doesn't go away. And Your Honor, again, what we are asking, should the case be remanded, is not that he get his son and they go walking off. He has the hardest work of his life ahead of him, but he deserves that opportunity. He deserves what almost every parent in his case has, and that is the opportunity to demonstrate that they can care for their child. And the only reason he has not had the opportunity to demonstrate that is the fact that he's been incarcerated. And again, Your Honor, there are no grounds that fit this defendant that would have his incarceration be the basis for termination of his criminal rights. Your Honor, again, this case involves a fundamental liberty interest. When this is the case, state actors, either the caseworker, the state's attorney's office, or the trial judge are all obligated to protect the respondent parent's procedural rights. The caseworker breaks her duty to attempt to reunite the respondent with his firstborn son. And Your Honor, we obviously disagree that her inability to, or her unwillingness to work the case, as she is obligated to do by law, did not have an impact on ultimately a filing on fitness. And that ground was not included in the first place. No, it didn't have to be, but it probably never would have been, considering the fact that there were no grounds based on his incarceration. There were very few grounds that were available. Again, when the child was born, he was incarcerated. That's not a good thing, but that is the fact. The child was removed from custody not because of actions of my client, but because of the actions of his now ex-wife. But Your Honor, instead this caseworker placed the minor on the fast track to adoption, and that is really what we have going on here in this case. We have a caseworker who decided that the child would be better off adopted, and she fast-tracked him, completely trampling my client's rights, and that is not how the system works. And only when the state's attorney realized that she would lose on the two grounds that they had presented in the initial petition did she come up with a depravity, Your Honor, and it's essentially throwing mud on the wall to see what sticks. And Your Honor, that is not what justice is. That is not our juvenile justice system. And with all due respect to the trial court, it failed to consider a substantial body of evidence which clearly and convincingly countered the state's case. The trial court erred when it failed to consider in any way the respondent's significant achievements in rehabilitation. We ask this court to review the definition of depravity, the evidence presented by the state's court finding of depravity, and to review the evidence submitted to rebut that conclusion. And the only just conclusion supported by clear and convincing evidence, with all due respect and deference to the trial court, is that the respondent's father is not depraved and that he should have the opportunity to be a father to his child. Thank you, Your Honor. Thank you, counsel. We appreciate the briefs and arguments. Thank you, counsel. We'll take the case under advisory review shortly.